## COMPENSATION FOR THE PRIVILEGE OF LAYING GAS PIPES IN THE STREETS.

Common Pleas Court of Franklin County.

CITY OF COLUMBUS V. FEDERAL GAS & FUEL CO.

Decided, December 15, 1910.

*Municipal Corporations—Power of, to Contract for the Use of Streets— Gas Company Estopped from .Disputing Validity of Ordinance Under Which it Has Long Operated—Sections 9320 and 10128.*

1. A municipality may, in its propriety character, make a contract with a gas company, granting to such company the right to. use the city streets for the purpose of laying pipes for the purpose of distribution of gas to consumers, and providing a consideration for such use.

2. A gas company which has accepted several ordinances granting it the right to lay its pipes in the streets, and has so laid its pipes and used them for a long period, is estopped from questioning the validity of the ordinances under which it has been operating; nor can it successfully resist, as unreasonable, or as an unconstitutional taking of its property without due process of law, the collection by the municipality of a consideration of ten per cent. of its sales of gas as provided in its contract for the use of the streets.

*E. L. Weinland,* City Solicitor, for plaintiff.
*Williams, Williams, Taylor & Nash,* contra.

KINKEAD, J.

The questions presented by the demurrer to the several defenses in the answer, except that of estoppel, are the same as were those raised by demurrer to the amended petition and which were decided by my brother Rogers of this court on demurrer to the petition [10 N.P.(N.S.), 305].

Judge Rogers has passed upon the validity of the ordinances and the contract. The rule being that the decision of one judge is controlling of questions raised before another, this branch of the court will follow the ruling made on the demurrer to the petition, unless it should be discovered that some error had been

made, when the two judges will consider the matter and arrive
at a conclusion.  I have carefully considered this case, and all
the briefs submitted, and have had several consultations with
Judge Rogers and we both agree upon the conclusion made herein.

The important question first to be determined is the power
or right of the municipality to grant permission to the gas com-
pany to use its streets for laying the pipes for the transporta-
tion of gas to its customers.  Looking to the decisions of our
court of last resort, nothing definite is found bearing on the
power of the city.  In *Columbus* v. *Gas Co.*, 76 Ohio St., 309,
the decision was made to rest upon the provisions of Section
3550, Revised Statutes (General Code, 9320).  Counsel for both
sides differentiate that case from this, on the ground that it
related to an artifical gas company.  The court based its con-
clusions upon the provisions of Section 3550, Revised Statutes
(General Code, 9320), which makes the consent of the municipal
authorities a condition precedent to the use of streets for such
companies.  The court held the passage of an ordinance, and its
acceptance by the company, to constitute a valid contract between
the parties.

The opinion of the court in *Circleville L. & P. Co.* v. *Gas
Co.*, 69 Ohio St., 259, 269, is to the effect that Section 3551,
Revised Statutes (General Code, 9324), a part of the acts
relating to such companies, meant artificial and not natural gas.
The fact that Section 2491, Revised Statutes (General Code,
3994), was amended by inserting natural is advanced by the
court as an argument that Section 3551, Revised Statutes, did
not embrace natural gas companies.

In *East Ohio Gas Co.* v. *Akron*, 81 Ohio St., 33, the question
depended somewhat upon the nature of the franchise or privilege
obtained by the gas company from the city, but the court had
no occasion to go beyond the contract.  It said that whether a
contract for the privilege of entering the streets was necessary,
or whether the city was competent to make it, was immaterial.
It was held without regard to any question of statutory power
authorizing the city to make the contract, that the ordinance
giving consent to the natural gas company and its acceptance in

writing by the company constitutes a contract, and the rights of the parties thereunder are to be determined by the contract itself.

There is no doubt but that consent of the city to laying pipes in the streets is necessary even without specific provision to this effect by statute. It has general supervision over the streets in its private and proprietary character. In the exercise of this duty and right it may as a general proposition make a contract with a gas company, which, if accepted, becomes a valid and binding contract, binding on both parties. A company voluntarily entering into such a contract for its own benefit should not be heard to question the powers of the city. A city is not regulating the gas company by virtue of its police power nor by way of a license. It is granting the company valuable incorporeal property rights, in return for which the gas company agrees to pay the amount stipulated in the contract.

The decision of this case may rest upon this ground as sanctioned by *Columbus* v. *Gas Co., supra,* and *East Ohio Gas Co.* v. *Akron, supra.* In contemplation of the parties the amount fixed by the contract to be paid by the gas company to the city must be presumed to be the reasonable value of the rights and privileges granted, and conclusive upon the parties.

But I am of the opinion that brother Rogers of this court has solved the problem by holding as he did in overruling the demurrer to the petition, that the matter comes within the provisions of Sections 10128 *et seq.,* General Code.

These provisions confer the right of eminent domain on companies organized for the purpose, among other things, of the transportation of natural gas, petroleum, water or electricity, through tubing, pipes or conduits. Such appropriation is to be made in accordance with the law to owners of private property appropriated to the use of corporations. But when it is desired to go into the highways in rural districts or in streets of a city so far as the rights of the public are concerned, the county commissioners, and the councils of municipal corporations as to streets and alleys in their respective jurisdictions, subject to such regulation and restrictions as they prescribe, may grant

to such companies the right to lay such tubing, pipes, conduits, poles and wires therein.

It may be contended that these statutes were enacted solely for what are commonly understood to be pipe line companies organized for transportation purposes only; that they were not designed to apply to companies organized for the purpose of furnishing natural gas to the people of cities. No doubt that was what prompted this legislation. But it is well understood that the scope of the operation or applicability of a statute is not limited or prescribed by the object or purpose prompting its enactment.

A statute may include by inference a case not originally contemplated, when it deals with a genus and a thing which afterward comes into existence is a species thereof, and the language of the statute will generally be extended to the new species, although it was not known and could not have been contemplated by the Legislature when the act was passed. 36 Cyc., 1113.

The defendant company was organized for the purpose of transporting natural gas to its patrons. It does not obtain its gas within the city, but transports it from places distant therefrom. Judge Rogers has construed the last clause of Section 10129, General Code, as contemplating more than one continuous pipe in or through a municipality. The right of eminent domain is not extended to more than one line. If more is to be built, then the council of the city must give its consent.

If these provisions may properly be applied to cases like this, it is clear that the municipality had the right to make such bargain for the use of its streets as it deemed best.

The company desiring to lay its pipes in the streets for the transportation of gas to its customers, accepted the first, second and third ordinances, without any objections whatever thereto, and has continuously since used and enjoyed the privileges and benefits derived therefrom.

No objection is raised to the validity of the ordinances or contract until the city demands the performance of that part which requires the gas company to pay the 10 per centum of its receipts on gas sold by it.

It now raises the technical objection that the first ordinance is illegal and void, because the formality required by the then existing law to the effect that it was never recommended, ratified or approved by the board of public works, was not complied with. The claim is not only groundless in reason and fact, but the question was directly passed on by my brother Dillon in *Columbus* v. *Gas & Fuel Co.*, 2 N.P. (N.S.), 277, wherein it was held by this court that the subsequent ordinances corrected any defect in the first. Even if the first was invalid, a valid contract was made by the written acceptance of the subsequent ordinances, according to the decisions of the Supreme Court before cited.

The gas company is estopped by its conduct from questioning the validity of the ordinance or contract upon any ground whatever. It matters not whether any of the statutes discussed clearly cover the case, because the company by its acts is in no position to relieve itself by any claim of want of power in the city.

The company accepted all three ordinances in writing; it has done all the things contemplated thereby, constructed its pipe lines carrying gas to its customers, the people of the city, with whose legal representatives, servants and agents, and for whose benefit, it made the contract; it has been continuously operating thereunder, obtaining all the benefits and emoluments derived therefrom. Its pipes are now in the streets. It has not paid the city the money it promised to pay by its contract, and now seeks to have that part of the contract annulled for the alleged invalidity of the ordinances and of the contract. Acceptance of the valuable rights given it by the city and their continuous enjoyment for eleven years effectually estops defendant from questioning the right or power of the city to make the contract.

The rule is well settled in this state that a property owner who invokes the action of a municipality to improve a street for his benefit, and the street is improved, is estopped from thereafter seeking to have the law under which the improvement was made declared unconstitutional to evade payment of his part of the assessment.

His act of invoking the operation of the statutes constitutes a waiver of its invalidity. So, in this case, it may be held by analogy that the act of the gas company in invoking the action of the city to pass the ordinance, its acceptance and the possession and use of the streets, must be held to be a waiver of any want of power or invalidity of the ordinance, and in good conscience and equity to estop it from now raising either irregularities in the passage of the ordinance, or the unconstitutionality thereof.

This is by no means a new proposition. The principle has been applied in various forms. Corporations organized under an unconstitutional statute which proceed to do business and receive benefits under it can not be heard to allege that such statute is unconstitutional. 8 Cyc., 793.

Those who procure the enactment of a statute, acquiesce in, ratify, or approve of it, or receive benefits under it, may become estopped from denying its constitutionality. 8 Cyc., 794. See *Treasurer* v. *Martin*, 50 Ohio St., 197.

The gas company sought and obtained this ordinance; this rule applies to it, and the decision of the demurrer may rest entirely upon this ground.

The defendant has pleaded that the city is estopped from claiming compensation under Clause 9 of the ordinance by reason of an action brought by it wherein it alleged that the provisions of said Section 9 were contrary to public policy, denied the right and liberty of contract, and asked judgment of the court thereon.

Defendant further answering says that, relying upon the said acts of the said city, it continued to furnish gas to the inhabitants of the city of Columbus, Ohio, and to expend large sums of money in the improvement of its plant, and in the construction of additional lines of pipe in the said city of Columbus, which it would not have done if it had known that the city of Columbus would insist upon payment of said 10 per cent. pretended to be provided for by said pretended provisions of said pretended Section 9 of said ordinance.

The gas company thereupon insists that the city is estopped from asserting any claim against this defendant by reason of that action.

The demurrer of the city to this alleged plea of estoppel is sustained, because it does not set up the fact that any judgment was rendered in that action. Having decided this branch of the demurrer on the facts or want of facts stated in the answer, the court is justified in stating that an examination has been made of the printed record in the case above referred to by the gas company filed in the Supreme Court, as well as of the decision of Judge Dillon in *Columbus* v. *Gas & Fuel Co.*, *supra*. It strengthens the view herein expressed that the company ought to be estopped from questioning the validity of the ordinances. It appears that the gas company set up defenses to the action by the city to deprive it from its right to use the streets in which it expressly relied on the validity of the ordinances here claimed to be invalid, in order to then support its claim under them to the use of the streets, averring its written acceptance of all of them. It set forth the various acts in order to show the validity of the ordinance to sustain their right to the privileges. It avers that the gas company had acquired properties producing large quantities of gas, and in reliance in good faith upon the validity of the ordinance passed May 29, 1899, it had expended large sums of money in the development of its property and in laying its pipes; that between July 31, 1899, and April 3, 1900, the dates of the passage of the ordinances (this includes the one now complained of as not having been recommended by the board of public works), in pursuit of the purpose of carrying out the terms and conditions of said ordinances imposed by the terms thereof and relying in good faith upon the validity of said ordinances, it has made large expenditures of money.

Expenditures of money alleged to have been made by the company at different times are as follows:

| | | |
|---|---|---:|
| (?) | (?) | $ 68598.42 |
| Between May, 1899, to July, 1899 | | 33233.73 |
| Between July 31, 1899, to April 3, 1900 | | 337534.50 |
| Between April, 1900, and April 14, 1903 | | 116322.74 |
| Subsequent to April 3, 1900 | | 108904.30 |
| | | $664593.69 |

It claimed that to take the privileges away from it conferred by the ordinances would result in a destruction and loss of its property amounting to more than $500,000.

Because of the facts alleged in its answer it is claimed that the city is estopped from claiming the right to have the ordinances, or any of them, declared illegal or invalid.

If, therefore, the gas company had set forth all the facts concerning the alleged estoppel, it would have shown that this court in that case had given judgment sustaining the ordinances and in favor of the contentions of the gas company.

Coming back to the technical objections made to the ordinances and contract, it may be observed that the formalities required by law for the passage of ordinances and execution of contracts are designed to safeguard the rights of the public and to give security to rights acquired by those dealing with the city. These formalities, and the fact that the municipality is a public corporate entity, whose powers are circumscribed by constitutional and statutory law, requires to this extent that the court shall view contracts made by it with individuals in a different light than it does ordinary contracts between individuals. Outside these considerations, however, the same principles of honesty and consistency must be observed and applied especially to the conduct of the individual or corporation dealing with the municipality. The common notion is that men who make contracts should keep and perform them even if the bargain is a bad one. If it turns out to be unusually burdensome, persons governed by the true sense of justice and fairness may and should modify their contracts which unjustly burden the one or the other. Municipalities should be actuated by the same principles.

The powers conferred upon the municipality are designed to be for the benefit of the people whom it represents as well as to prescribe the limitations to which those dealing with it must conform for their own protection.

The general policy is that the municipality may regulate by a license and exact such fees as are commensurate with the reasonable expense of regulation and supervision. The city per-

forms this duty by an ordinance and the issuance of a license paper upon payment of the fee.

But the duty of the city in respect to the streets is an altogether different matter. Streets are part of the real property belonging to the city either as a fee or an easement. Acting under the statutes prescribing its powers respecting its streets the city is in the position of a proprietor or owner, and may make such bargains for their use by gas companies and other public service corporations as in its judgment it deems best within its powers. It follows from this premise that it is not limited to an exaction prescribed by mere license regulation, but may make bargains with public service corporations for their use analogous to those made by individuals respecting their lands. Contracts made by the city within its powers for use of its streets must be construed as are ordinary contracts, and corporations or individuals must not be allowed to break them upon technical grounds or by resort to such constitutional arguments as are made in this case by the gas company.

The claim made that the amount of ten per cent. on the sales of gas required to be paid by the gas company is unreasonable, because the company is required to pay all expenses of replacing streets torn up to put in pipes, that no other compensation can be required, and for that reason the ordinance is unconstitutional, is answered in the negative by the reasons already advanced, viz., that the 10 per centum is exacted for the taking of the streets for use by the company in which to carry on its business; that the compensation to be paid being a pure matter of agreement, the parties must stand by their contract.

The claim of defendant that the exaction of the 10 per centum is unconstitutional under the United States Constitution as taking the property of the gas company without due process of law is answered in the negative by the same argument.

The judgment of the court is that the demurrer to second, third, fourth, fifth, sixth, seventh, eighth, and ninth defenses is sustained. This leaves nothing in the answer in the way of a defense.

The unauthorized form of denial contained in the so-called first defense is disregarded. The material facts necessary to a

conclusion by the court are admitted by the pleadings as they now stand, and final judgment may as well be entered upon the pleadings.

The decision of the court is a final conclusion of the right to recover the percentage and of the right to an accounting.